```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT
```

ALLY BANK,                              :
                                        :
         Plaintiff                      :
                                        :
    v.                                  :   Case No. 2:19-cv-00021
                                        :
                                        :
STEPHEN W. WEBSTER, in his              :
capacity as administrator of            :
the Estate of Peter James               :
Lynch, and                              :
BEST FRIENDS ANIMAL SOCIETY             :
a/k/a BEST FRIENDS ANIMAL               :
SANCTUARY,                              :
                                        :
         Defendants.                    :

## OPINION AND ORDER

Ally Bank brings this interpleader action seeking a determination as to which of the Defendants, Stephen J. Webster or Best Friends Animal Society ("BFAS"), is entitled to the proceeds of three Ally Bank accounts which were held by Peter Lynch before his death in 2017. Defendant BFAS moves to transfer this action to the United States District Court for the District of Utah. Defendant Stephen Webster opposes the Motion to Transfer. Plaintiff Ally Bank neither joins nor opposes transfer.

For the reasons set forth below, BFAS's motion is **denied**.

1

**FACTUAL BACKGROUND**

Peter James Lynch ("Lynch") passed away in September 2017. Lynch was a Vermont resident. ECF 18 at 3. The Administrator of Lynch's estate ("Estate"), Stephen J. Webster ("Administrator") is also a resident of Vermont. *Id*.

Prior to his death, Lynch opened three accounts with Ally Bank: Account x6789, Account x4303, and Account x9500 (collectively, "Accounts"). ECF 14 at 3. Ally Bank is a Utah corporation with its principal place of business in Sandy, Utah. *Id*. at 2.

On July 19, 2018 Administrator notified Ally Bank that Lynch was deceased and requested that Ally Bank send a check payable to the Estate for the proceeds of the three accounts. ECF 14 at 3. Ally did not do so. Instead, Ally sent Administrator two letters. ECF 60 at 2. The first thanked Administrator "for providing Ally Bank with the proper documentation to carry out" the request for the estate claim. *Id*. The second letter stated the balances in the accounts as of Lynch's date of death, identified each account by account number, and indicated that "Best Friend Animal Sanc" [sic] was the beneficiary to each account. ECF 4-4. The designation of BFAS as beneficiary to the Accounts was unknown to Administrator until this letter.

2

Around the same time, without Administrator's knowledge, Ally Bank contacted BFAS by letter, stating that "[i]t is important that we speak with you regarding the Ally Bank account(s) held in the name of Peter J Lynch and the resolution of the estate." ECF 4-3. No further information was given regarding BFAS being a possible beneficiary and BFAS made no claim against the Accounts at the time. ECF 18 at 4.

Administrator informed Ally Bank that he did not agree that BFAS was the beneficiary of the Accounts. Administrator requested "any documentation that you have that you maintain reflects his implementation of a beneficiary designation for any of his accounts." ECF 60 at 2. Ally Bank informed Administrator that "Mr. Lynch's account application and beneficiary designations were done via the call center, therefore there are no written application documents [available]. Recordings of conversations are no longer available." ECF 13-14.

Ally also asked Administrator to "provide [ ] a court order to require the bank to pay the funds to the estate." ECF 13-14.

On September 23, 2018, Administrator, on behalf of Lynch's estate, filed an *ex parte* motion in the Probate Division of the Vermont Superior Court, requesting that Ally be ordered to pay the Proceeds of the Accounts to the estate. ECF 14 at 4. On September 24, 2018, Probate Judge Frederick Glover issued an

order enjoining Ally Bank from remitting any of the funds from the Accounts to anyone other than Administrator. ECF 13-16.

Ally Bank notified BFAS of the order and of its status as the purported beneficiary of the Accounts. ECF 13 at 16. After being notified by Ally Bank of the order, BFAS intervened in the Probate Court and filed a Motion to Stay and Request for Hearing. ECF 13-17.

On December 5, 2018, Probate Judge Glover found that the Probate Court did not have jurisdiction to determine ownership of the Accounts and held that "Ally Bank shall not distribute the funds [in the Accounts] until either an agreement between the parties is reached or until a Court of competent jurisdiction determines the ownership of those accounts." ECF 4-9.

Sixty days after the Probate Court's order, Ally Bank initiated this interpleader action. ECF 1. BFAS then filed a Motion to Transfer this action to the United States District Court for the District of Utah, arguing that a mandatory forum selection clause, contained in a Deposit Agreement, governed each of the Accounts. ECF 14.

The Court held a hearing on all pending motions on June 10, 2019 and ordered limited discovery on the issue of the forum selection clause. ECF 55 at 29.

Through discovery, several facts surrounding the Deposit Agreement came to light. First, it was Ally Bank's regular business practice to send a "Welcome Kit" to its customers each time a new account is opened. ECF 57 at 4. A copy of the governing Deposit Agreement is included in each Welcome Kit. *Id*. Ally Bank's files associated with Lynch's accounts contain copies of the three Welcome Kit cover letters that were sent to Lynch upon the opening of his three accounts. *Id*. at 5. The Estate has produced copies of the Welcome Kit cover letters, indicating that they were in Lynch's possession before he passed away. *Id*. Records from Ally Bank indicate that Lynch called Ally Bank on August 20, 2010. Ally's record of that conversation notes that "customer said that he read in he [sic] deposit agreement book that an acct goes into dormancy after 12 mths, advised customer if that happens we will mail him a letter and he will have to sign and return . . ." *Id*. at 6.

Ally's business records show that the Deposit Agreement was amended, effective January 7, 2017. ECF 57-8. Ally Bank's business records show that the January 7, 2017 Deposit Agreement was mailed to Lynch on December 16, 2016, along with a letter explaining the major changes. ECF 57 at 7. Lynch had a copy of this December 16, 2016 letter in his file, and the letter has been produced by the Estate in this case. *Id*.

The forum selection clause in the amended Deposit Agreement reads as follows:

> All of our actions relating to your account, including this Agreement, will be governed by the laws and regulations of the United States and, to the extent not preempted, the laws and regulations of the State of Utah. Any lawsuit regarding your account must be brought in a proper court in the State of Utah. If any part of this Agreement is determined to be invalid or unenforceable, such determination will not affect the remainder of this Agreement.

ECF 57-8 at 8. The forum selection clauses in the previous Deposit Agreements sent to Lynch were substantially similar to the one included in the January 7, 2017 Deposit Agreement. ECF 57-4, ECF 57-5, ECF 57-6.

## **LEGAL STANDARD**

The party moving for transfer bears the burden of showing by clear and convincing evidence that transfer is warranted. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). When a forum selection clause is at issue, the plaintiff is "entitled to have the facts viewed in the light most favorable to it and no disputed fact should be resolved against that party until it has had the opportunity to be heard." *Longo v. FlightSafety Intern., Inc.*, 1 F. Supp. 3d 63, 67 (E.D.N.Y. 2014) (quoting *New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F. 3d 24, 29 (2d Cir. 1997)).

**DISCUSSION**

Motions to transfer are normally governed by 28 U.S.C. 1404(a) which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." If there is a forum selection clause at issue, however, the transfer analysis is altered: a valid forum selection clause is given "controlling weight in all but the most exceptional cases." *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835, 839 (S.D.N.Y. 2017) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63(2013)).

Here, BFAS's argument in favor of transfer rests entirely on the forum selection clause contained in the Deposit Agreement.

The Second Circuit has held that a forum-selection clause is "presumptively enforceable" if the moving party can demonstrate that: (1) the clause was "reasonably communicated to the party resisting enforcement"; (2) the clause is mandatory, rather than permissive, in nature; and (3) the clause encompasses the claims at issue. *Pence v. Gee Group, Inc.*, 236 F. Supp. 3d 843, 851 (citing *Phillips v. Audio Active Ltd*., 494 F.3d 378, 383 (2d Cir. 2007)). If the moving party can show that

7

these conditions are satisfied, the clause must be enforced unless the party opposing transfer makes a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid." *Martinez v. Bloomberg LP*, 740 F.3d 211, 221 (2d Cir. 2014) (quoting *Phillips*, 494 F.3d at 383-84).

### 1. Whether the Clause Was Reasonably Communicated to Lynch

A forum selection clause is reasonably communicated where it is "phrased in clear and unambiguous language." *Magi XXI, Inc. v. Stato Delia Citta del Vaticano*, 818 F.Supp.2d 597, 604-05 (E.D.N.Y. 2011). Courts have also considered the inclusion of a forum selection clause within the main text of a contractual agreement to support a finding that the forum selection clause was reasonably communicated. *See, e.g. Gasland Petroleum, Inc. v. Firestream Worldwide, Inc.*, No. l:14-CV-597, 2015 WL 2074501 at *5 (N.D.N.Y. 2015) (finding reasonable communication where forum selection clause was included in the "main body of the text"); QSR Steel Corp., No. 3:14-cv-1017(VAB), 2015 WL 4393576 at *6 (D. Conn. July 16, 2015) (finding that a forum selection clause was reasonably communicated where "it was unambiguously written into the subcontract").

BFAS has adequately demonstrated at this time that the forum selection clause was reasonably communicated to Lynch. The forum selection clause was contained within the Deposit Agreement. When a customer signs up for an Ally bank account, it

is Ally Bank's regular business practice to send out a "Welcome Kit," which includes the governing Deposit Agreement. Copies of three Welcome Kit cover letters (one for each account) and a letter referencing an updated version of the Deposit Agreement have been produced by the Estate, indicating that these were in Lynch's possession. Most importantly, Ally Bank's records indicate that Lynch called Ally Bank, confirmed receipt of the Deposit Agreement, and even asked about a specific provision of the Deposit Agreement. BFAS has thus demonstrated that the forum selection clause was reasonably communicated to Lynch on multiple occasions.

### 2. Whether the Forum Selection Clause is Mandatory

It is undisputed that the forum selection clause in the Deposit Agreement is mandatory. Its "language is obligatory and clearly manifests an intent to make venue compulsory and exclusive." *Pence*, 236 F. Supp. 3d at 852 (internal quotation marks and citation omitted). Administrator has not argued to the contrary.

### 3. Whether the Claims and Parties in the Suit are Subject to the Clause

The Deposit Agreement was an agreement between Lynch and Ally Bank; BFAS was not a signatory to the Deposit Agreement. However, this fact is "insufficient, standing alone, to preclude enforcement of [the] forum selection clause." *Magi XXI, Inc. v.*

9

*State della Citta del Vaticano*, 714 F.3d 714, 721-22 (2d Cir. 2013).

A non-signatory to a contract containing a forum selection clause may still enforce the forum selection clause against a signatory when the non-signatory is "closely related" to another signatory such that the "non-signatory's enforcement of the forum selection clause is 'foreseeable' to the" party against whom the non-signatory wishes to enforce the clause. *Id*. at 723. In some situations, a "close business relationship" between the signatories and a non-signatory may satisfy the "closely related" test. *Power Up Lending Group, Ltd. V. Nugene International, Inc.*, CV 17-6601 (SJF) (AKT), 2019 WL 2119844, at *7 (E.D.N.Y. Jan. 10, 2019). In other situations, if the non-signatory's interests are "completely derivative of and directly related to, if not predicated upon" the signatory's interests, that is sufficient. *Id*. (internal quotation and citation omitted). Lastly, the closely related test is satisfied if the non-signatory "is a third-party beneficiary of the contract containing" the forum selection clause. *Vinci v. VF Outdoor, LLC*, No. 2:17-cv-00091, 2018 WL 3360756 at *4 (D. Vt. July 10, 2018).

BFAS argues that since it was the "designated beneficiary of the" Accounts, it qualifies as a third-party beneficiary of the Deposit Agreement and can thus enforce the forum selection

clause. ECF 31 at 8-9. This argument, however, puts the cart before the horse: the underlying issue of this case is whether or not BFAS is entitled to the proceeds of the Accounts. It has not been proven or disproven that BFAS is a beneficiary to the Accounts.

BFAS also argues that "beneficiary status is not required and need not be decided before [BFAS} can invoke the forum selection clause" because it was foreseeable to Lynch and Ally Bank that any beneficiary or claimed beneficiary would seek to invoke the forum selection clause. But the burden is on BFAS to demonstrate that it is "closely related" to another signatory and it has not done so.

The only thing connecting BFAS to the Accounts and to Lynch is an entry in Ally Bank's electronic records that designates "Best Friends Animal Sanc" as beneficiary to the Accounts. That entry was made by an unknown author and incorrectly gives "Best Friends Animal Sanc" a date of birth. There is no record of any written or recorded agreement from Lynch authorizing Ally Bank to place such a designation. Nothing in the discovery indicates that the designation of BFAS as beneficiary was mentioned in any communication from Ally Bank to Lynch prior to his death. Administrator disputes that Lynch even knew about the designation.

BFAS cannot point to any evidence, other than the single electronic entry, that connects it to Lynch. Indeed, it seems BFAS did not even know of this entry until Ally Bank informed the organization during Probate Court proceedings.

In sum, BFAS has not adequately demonstrated that they are a "closely related" non-signatory to the Deposit Agreement who can enforce the forum selection clause contained therein. As such, the Court finds that the claims and parties in this suit are not subject to the forum selection clause. BFAS's Motion to Transfer is denied.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Transfer is **denied**.

DATED at Burlington, in the District of Vermont, this 21st day of August, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge