```
                UNITED STATES DISTRICT COURT
                        FOR THE
                   DISTRICT OF VERMONT

ALLY BANK,                      )
                                )
        Plaintiff,              )
                                )
   v.                           )  Case No. 2:19-cv-21
                                )
STEPHEN W. WEBSTER, in his      )
capacity as administrator       )
of the Estate of Peter James    )
Lynch, and BEST FRIENDS         )
ANIMAL SOCIETY a/k/a BEST       )
FRIENDS ANIMAL SANCTUARY,       )
                                )
        Defendants.             )
```

## OPINION AND ORDER

This case revolves around funds held by Ally Bank ("Ally") in accounts established by Peter James Lynch.  Mr. Lynch is now deceased, and there is a dispute about who is entitled to the funds in his accounts.  The parties claiming entitlement to the funds are Stephen Webster ("Webster" or "Administrator") in his capacity as the administrator of Mr. Lynch's estate (the "Estate"), and Best Friends Animal Society ("BFAS").

Ally has filed a complaint for interpleader relief, asking for leave to deposit the funds into a Court account while the Estate and BFAS resolve their dispute.  Ally also asks to be dismissed from the case.  The Estate and BFAS oppose Ally's request for dismissal, arguing that its handling of Mr. Lynch's accounts is the cause of their dispute.  Both the Estate and BFAS have filed counterclaims against Ally.

Now before the Court is a series of motions, including

Ally's motion for interpleader relief and its two motions for dismissal of all counterclaims. For the reasons set forth below, the motion for interpleader is granted in part and denied in part, and the motions for dismissal of counterclaims are denied.

## I. Factual Background

The following facts are alleged in the initial pleadings and are not disputed. In 2010, Mr. Lynch opened three accounts with Ally: a money market savings account, a four-year CD and a five-year CD. The total balance of the accounts as of February 1, 2019 was $266,773.58. The Deposit Agreement for the accounts states that an account may be designated as "payable on death" ("POD"), in which case the designated beneficiary will receive the account funds after the account holder's death.

On July 25, 2018, Ally wrote to the Estate and identified BFAS as the beneficiary of each of the accounts. On August 7, 2018, Webster responded by letter informing Ally that the Estate disputed the designation of BFAS as beneficiary. On September 23, 2018, the Estate filed an *ex parte* motion in the Probate Division of the Vermont Superior Court, Windsor Unit, claiming entitlement to the funds. The next day, the Probate Court entered an Order directing Ally to turn over the funds to the Estate within 30 days. On October 10, 2018, BFAS filed a motion requesting that the Probate Court order be stayed. The Probate Court granted the motion to stay on December 5, 2018. Ally

commenced this interpleader action on February 27, 2019.

## II. Ally's Motion for Interpleader

Ally submits that it is merely a neutral holder of the three accounts, and that depositing the disputed funds into a Court account should put its role in this matter to rest. Defendants disagree, blaming Ally for the current dispute and bringing counterclaims for, among other things, negligence and breach of contract. Briefly stated, BFAS contends that Ally's electronic records show it was the intended beneficiary. The Estate submits that the beneficiary designations were invalid because they were not in writing. Ally responds that Defendants do not have any claims aside from their claims to the disputed funds, that the counterclaims therefore cannot stand, and that interpleader relief is appropriate.

The first question is whether Ally may deposit the funds into a Court account. BFAS does not oppose such a deposit. The Estate contends that a deposit would be contrary to the Probate Court's *ex parte* order, thereby violating principles of federalism and comity. The Probate Court ordered that "Ally Bank shall not distribute the funds held in Mr. Lynch's Ally Bank accounts until either an agreement between the parties is reached or until a Court of competent jurisdiction determines the ownership of those accounts." Depositing the funds into a federal court account is not a "distribution" of funds. It

3

instead allows the holder of the funds to terminate its role as custodian, and shifts that role to a court. Accordingly, placing the disputed funds into this Court's account will not violate the Probate Court order, and Ally will be allowed that measure of interpleader relief.

The second question is whether Ally is entitled to dismissal from the case in light of the counterclaims filed against it. An interpleader action is not an absolute shield from counterclaims. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967) ("[I]nterpleader was never intended . . . to be an all-purpose 'bill of peace.'"); *Bell v. Nutmeg Airways Corp.*, 66 F.R.D. 1, 9 (D. Conn. 1975) (interpleader action does not act "as a bar to the filing of either compulsory or permissive counterclaims"). Indeed, "[i]t is not [the] function of an interpleader rule to bestow upon the stakeholder immunity from liability for damages that are unrelated to the act of interpleading, such as negligence in preserving the fund." 44B Am. Jur. 2d Interpleader § 4 (footnotes omitted).

Here, the Estate and BFAS are not suing Ally for its act of interpleading. They instead claim that Ally's errors and misconduct deprived them of the disputed funds, and have caused them to incur fees and costs that would have otherwise been unnecessary. The damages claimed also include exemplary and punitive damages beyond the funds in the accounts. Accordingly,

4

the counterclaims survive Ally's interpleader action. *See, e.g., Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) ("interpleader protection generally does not extend to counterclaims that are not claims to the interpleaded funds"); *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264 (3d Cir. 2009) ("[T]he normal rule is that interpleader protection does not extend to counterclaims that are not claims to the interpleaded funds.").

Ally's motion for interpleader is therefore granted in part and denied in part. Ally will be allowed to deposit funds into a Court account, but will not be dismissed from the case on the basis of its motion for interpleader.

### III. Ally's Motion to Dismiss BFAS's Counterclaims

The Court next turns to Ally's motion to dismiss BFAS's counterclaims. Ally brings its motion pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing claims under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, only a pleading that "states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

When reviewing a counterclaim under Rule 12(b)(6), the Court takes all factual allegations in the counterclaim as true. *Id.* at 678. The Court also views the allegations in the light most favorable to the counterclaimant and draws all inferences in that party's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

    A.    **Facts Alleged in BFAS's Counterclaims**

BFAS is a non-profit corporation headquartered in Utah. Its counterclaims allege that Mr. Lynch, a Vermont resident, was a valued supporter of and regular donor to BFAS. Between 2004 and 2014, he made 20 separate donations to the organization. In 2004, 2008, and 2009, Mr. Lynch allegedly asked BFAS about the process for making a larger bequest, and BFAS sent him information on the subject.

After opening his three bank accounts, Mr. Lynch contacted

Ally and directed it to designate the accounts as POD. He also directed Ally to name BFAS as the sole beneficiary. BFAS claims, upon information and belief, that Ally completed the application and beneficiary designation via its call center.

BFAS alleges that Ally negligently failed to document, record, or preserve the recordings related to Mr. Lynch's beneficiary designation. BFAS also claims that Ally negligently failed to indicate on certain bank statements that the accounts were POD accounts and that BFAS was the account beneficiary. Ally also allegedly, and negligently, failed to take the legal steps necessary to render Mr. Lynch's electronic signatures valid under state and federal law. BFAS claims that these negligent acts and omissions created the current dispute with the Estate.

BFAS agrees with Ally that the accounts are each governed by a Deposit Agreement. The Deposit Agreement allows for POD accounts, and states that the account holder can designate a beneficiary. The Deposit Agreement also states that the designated beneficiary will receive the account funds after the account holder's death. BFAS contends that Ally has failed to perform this contractual obligation.

BFAS's counterclaim asserts six causes of action against Ally: negligence; breach of contract; breach of implied covenant of good faith and fair dealing; negligent misrepresentation; breach of fiduciary duty; and constructive trust. Ally contends

7

that those counterclaims should be dismissed because BFAS has no cognizable claim independent from its claim to the money in the accounts. Ally also attacks the merits of BFAS's claims, arguing first that its tort claims are barred by the economic-loss rule. Ally next submits that it has no common law or contractual duty owed to BFAS aside from the accounts, and that BFAS is either entitled to the funds as a matter of contract, in which case Ally will pay and there has been no harm, or BFAS is not entitled to the funds, in which case BFAS is not a third-party beneficiary and has no relationship with Ally.

### B.   Negligence

Ally argues that BFAS's negligence claim is barred by the economic-loss doctrine. While there is a dispute about whether Utah law or Vermont law governs this diversity action, both jurisdictions recognize the economic-loss rule. *See SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 32; *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 314-15 (2001).

Generally speaking, the economic-loss doctrine prohibits recovery in tort for purely economic losses. *See Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 2012 VT 80, ¶ 10; *see also Gus' Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 558 (2000) (mem.) ("Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic

loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss."). "But courts have recognized a host of exceptions to this general principle." *Sutton v. Vermont Reg'l Ctr.*, 2019 VT 71, ¶¶ 30-31. For example, in *Long Trail House Condominium Association,* the Vermont Supreme Court acknowledged that there "might be recovery for purely economic losses in a limited class of cases" involving parties who have "a special relationship, which creates a duty of care independent of contract obligations," such as the obligation to avoid violating a "professional duty." 2012 VT 80, ¶ 13; *see also Hermansen v. Tasulis*, 2002 UT 52, ¶ 17 (noting that courts will look at "whether a duty exists independent of any contractual obligations between the parties").

BFAS argues that because it is a third-party beneficiary to the Lynch accounts, Ally owed it a duty of care. Whether BFAS is, as a matter of law, the proper beneficiary is not at issue at this time. Instead, the Court must determine whether BFAS brings a plausible tort claim. Accepting the facts set forth in the counterclaim as true, BFAS has plausibly alleged that Ally had a non-contractual duty to exercise professional care in managing Mr. Lynch's accounts, that the duty extended to BFAS, that Ally breached its duty, and that BFAS suffered damages as a result. *See generally Arrow Indus., Inc. v. Zions First Nat'l Bank*, 767

P.2d 935, 938 (Utah 1988) (holding that "that UCC section 4-103 recognizes a bank's duty to act in good faith and exercise ordinary care in all its dealings").  Moreover, BFAS has standing to bring a tort action as a plausible third-party beneficiary.  *See, e.g., Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 625 (Mo. 1995) (holding that beneficiaries of a trust have standing to sue the settlor's attorney for malpractice because the attorney did not effectuate the client's wishes for a transfer of property); *Auric v. Continental Cas. Co.*, 331 N.W.2d 325, 327 (Wis. 1983) (holding that intended beneficiaries have a right of action against an attorney for negligently supervising execution of a will).  The motion to dismiss BFAS's negligence claim is therefore denied.

  **C. Breach of Fiduciary Duty**

  Ally next moves to dismiss BFAS's claim for breach of fiduciary duty.  "Fiduciary duties are implicated by certain special relationships."  *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 2015 UT 55, ¶ 34.  A fiduciary relationship exists between two parties when one of them "is required to act for the benefit of [the other] on all matters within the scope of their relationship."  Black's Law Dictionary 702 (9th ed. 2009).

  BFAS submits that, as a named beneficiary, it was owed a fiduciary duty by Ally.  Utah law holds that an intended third-party beneficiary to an account may be owed a fiduciary duty by

the holder of account funds. *See Orlando Millenia, LC*, 2015 UT 55, ¶ 37 (holding that an escrow agent owes a fiduciary duty to an intended third-party beneficiary). The Vermont Supreme Court has acknowledged that same principle. *See, e.g., Bovee v. Gravel*, 174 Vt. 486, 488 (2002)("To be sure, a number of courts have relaxed the privity rule in limited circumstances—most often in the estate-planning context—where it can be shown that the client's purpose in retaining the attorney was to directly benefit a third party."). As with BFAS's negligence claim, the facts developed in discovery may show that BFAS was an intended beneficiary and that Ally owed it a fiduciary duty. The motion to dismiss BFAS's fiduciary duty claim is therefore denied.

    D.    **Constructive Trust**

In Count VI of its counterclaim, BFAS asks the Court to impose a constructive trust for its benefit and protection. A "constructive trust is a tool often used by courts to prevent unjust enrichment." *Preston v. Chabot*, 138 Vt. 170, 175 (1980). "Such trusts will arise whenever title is acquired through a confidence which has been abused, but the forms and varieties of such trusts will differ depending on the circumstances." *Legault v. Legault*, 142 Vt. 525, 529 (1983).

It is not clear whether constructive trust is a stand-alone cause of action or merely a remedy. Some cases have applied statutes of limitations to constructive trust claims, thus

implying that constructive trust its own cause of action. *See, e.g., Auerbach v. Samuels*, 349 P.2d 1112, 1116 (Utah 1960); *In re Delligan's Estate*, 111 Vt. 227, 235-37 (1940). As to the merits of the claim, Ally contends that there can be no unjust enrichment because it is not looking to benefit by retaining the account funds. Nonetheless, the funds are currently in Ally's possession, and the imposition of a constructive trust is a viable remedy to prevent the unjust enrichment of any party, including the Estate. Accordingly, the Court will not dismiss BFAS's cause of action at this time.

    **E.**    **Contract Claims**

Ally's final argument is for the dismissal of BFAS's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Ally contends that if BFAS is the third-party beneficiary of the accounts, it will be paid and its contract claims will be moot. If BFAS is not the beneficiary, Ally submits that its contract claims will necessarily fail.

As noted above, the merits of BFAS's claim to third-party beneficiary status are not yet at issue. Instead, the Court must consider the plausibility of BFAS's claim. It is well established that "[t]hird-party beneficiaries are 'persons who are recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration.'" *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497,

506 (Utah 1980) (quoting 4 Corbin on Contracts, § 774 at 6 (1960)). BFAS claims that Ally agreed to designate the accounts as POD, with BFAS named as the beneficiary upon Mr. Lynch's death. Those facts, accepted as true, offer a plausible claim that BFAS had rights that are enforceable in contract.

Ally counters that BFAS's claims are premised upon requirements that are not a part of the Deposit Agreement. BFAS's fundamental claim is that the Deposit Agreement allowed for a POD account, and that Mr. Lynch established such accounts with BFAS as the beneficiary upon his death. BFAS further alleges that Ally failed to properly establish the beneficiary aspects of those accounts. Whether BFAS's allegations are accurate remains to be shown. At this early stage in the case, the motion dismiss its contract and covenant claims for failure to state a claim is denied.

## IV. Ally's Motion For Judgment on the Pleadings

Ally has also moved to dismiss the Estate's counterclaims. Because the Estate has filed an answer to the Amended Complaint, Ally brings its motion as one for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Rule 12(c), like Rule 12(b)(6), requires the Court to accept the factual allegations in the Estate's counterclaims as true and to draw all inferences in its favor. *See Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009). To survive a Rule 12(c) motion, the counterclaims must

13

each contain sufficient facts to state a claim to relief that is plausible on its face. *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). A court may grant the motion when the "material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

### A. Facts Alleged in the Estate's Counterclaims

The Estate alleges that Mr. Lynch died at Gifford Medical Center in Vermont on September 10, 2017, following a serious illness. Prior to Mr. Lynch's death, Stephen Webster helped him put his affairs in order. The two men met in August 2017, and Mr. Lynch granted Webster power of attorney. After that meeting, and according to Mr. Lynch's written instructions, Ally bank statements were sent to Webster's post office box. On December 4, 2017, Webster was appointed Administrator of the Estate by the Vermont Probate Court.

The Estate claims that prior to Mr. Lynch's death, none of the bank statements for the three Ally accounts identified any beneficiaries, and there is no recital of the words "payable-on-death" or "POD" on the documents establishing the accounts. The Estate further alleges that Mr. Lynch never signed any document evidencing an intent to leave his account funds to a beneficiary other than the Estate.

14

On February 10, 2018, Ally issued statements which stated for each account: "Account ownership: Single with Payable on Death Beneficary."  On July 25, 2018, Ally sent the Estate a letter regarding the three accounts indicating "Beneficiary(s): Best Friend Animal Sanc."  Webster responded in a letter dated August 7, 2018, denying that Mr. Lynch ever made such a beneficiary designation and asking Ally to provide any and all supporting documentation.  After Ally notified Webster that it required a court order compelling payment to the Estate, Webster requested all account applications completed by Mr. Lynch and, again, any documentation reflecting a beneficiary designation.

On August 30, 2018, Ally sent a response stating that "there are no written application documents to provide.  Recordings of conversations are no longer available."  The letter also reiterated Ally's request for a court order compelling the payout of account funds to the Estate.  On September 24, 2018, the Probate Court issued an order holding that "[n]o payable-on-death arrangement exists with Peter J. Lynch's three accounts at Ally Bank, and the funds belong to his estate."  In so holding, the court concluded that Vermont law requires a signature to establish a payable-on-death arrangement.  The Probate Court thus ordered Ally to either pay the funds to the Estate within 30 days, or request a hearing within ten days.

BFAS had no knowledge that it was the purported beneficiary

15

of the Lynch accounts until it was notified by Ally in October 2018. After such notification, BFAS filed a motion to stay and a request for hearing with the Probate Court. The Probate Court subsequently ruled that it did not have jurisdiction to determine the rightful beneficiary, and enjoined Ally from distributing the funds until a court of competent jurisdiction resolves the dispute.

The Estate's counterclaim asserts four causes of action: violation of the Vermont Consumer Protection Act (VCPA); fraud and misrepresentation; breach of contract; and punitive damages. Ally's motion for judgment on the pleadings again seeks to bar certain claims on the basis of the economic-loss rule. Ally also submits that the Estate failed to allege fraud with the required degree of particularity, or to support its fraud claim with sufficient facts. The VCPA claim is arguably barred because Utah law applies in this case, and the Estate is not a "person." Finally, Ally contends that there can be no breach of contract claim because the Estate has not identified a breach of the Deposit Agreement.

### B.   Fraud and Misrepresentation

Ally's motion first argues that the Estate's counterclaims are barred by the economic-loss rule. As discussed previously with respect to BFAS's counterclaims, the economic-loss rule may not apply where a party can show that a duty was owed by virtue

of a special relationship.  Furthermore, the economic-loss rule is typically applied to negligence actions, and the Estate is not alleging negligence in this case.  *See, e.g., EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30.

As to the sufficiency of the Estate's fraud allegations, Federal Rule of Civil Procedure 9(b) requires a party to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  The Estate's counterclaims assert that the designation of BFAS as the beneficiary was fraudulent, as there was no proper indication on the accounts or in bank statements issued prior to Mr. Lynch's death that such a beneficiary existed.  The fraud was allegedly expanded when Ally induced the Estate to secure a Probate Court order (with no intention of abiding by that order), and failed to correct inaccurate representations made to the Probate Court by BFAS.  These allegations are sufficiently detailed for a plausible claim of fraud.

### C. Punitive Damages

Ally has also moved for judgment on the Estate's punitive damages claim.  The Estate concedes that punitive damages is generally not a separate cause of action, and is instead a

17

remedy.  Reading the counterclaim as merely seeking a particular remedy, the Estate must allege facts that plausibly entitle it to such damages.

A punitive damages award requires a showing that the defendant acted with "a reckless or wanton disregard of plaintiff's rights."  *L'Esperance v. Benware*, 2003 VT 43, ¶ 18. Here, additional facts need to be developed to establish that Ally engaged in the sort of conduct that gives rise to punitive damages.  *Fly Fish Vermont, Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶ 25 ("the culpability necessary for an award of punitive damages based on reckless or wanton misconduct requires evidence that the defendant acted, or failed to act, in conscious and deliberate disregard of a known, substantial and intolerable risk of harm to the plaintiff, with the knowledge that the acts or omissions were substantially certain to result in the threatened harm").  Nonetheless, at this stage in the case, the allegations against Ally, and in particular the claims of intentional fraud, raise a plausible claim of reckless or wanton conduct warranting a punitive award.

    **D.**    **Breach of Contract**

Ally's arguments for dismissal of the Estate's breach of contract claim mirror the arguments asserted with regard to the same claim by BFAS.  Ally contends that either the Estate is entitled to the funds, in which case it will collect from the

18

interpleader account, or it is not entitled to the funds and there can be no breach of contract claim.

The Estate's claim is that Ally breached its contractual obligations to Mr. Lynch. The breach allegedly includes the failure to follow Webster's instructions to remit funds to the Estate. Discovery has reportedly revealed other breaches, most specifically of the Deposit Agreement. Even without such discovery, however, the counterclaim plausibly alleges that Ally had both express and implied contractual obligations to Mr. Lynch, and violated those obligations when it failed to honor the Estate's claim.

**E.   VCPA**

Finally, Ally moves for judgment on the Estate's VCPA claim. "To establish a 'deceptive act or practice' under the [VCPA] requires three elements: (1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product [or service]." *Madowitz v. Woods at Killington Owners' Ass'n, Inc.*, 2014 VT 21, ¶ 23.

While Ally contends that the Estate is not a consumer, there can be no doubt that Mr. Lynch was a consumer, and case law suggests that a consumer fraud claim survives the death of the

19

consumer.  *See, e.g., State v. Therrin*, 161 Vt. 26, 31-32 (1993). The Estate submits that, among other things, Ally failed to disclose the POD designation prior to Mr. Lynch's death.  The Estate also claims that Ally had misleading communications with Webster.  Whether Ally had a legal obligation to make certain disclosures to Mr. Lynch has not yet been determined, but claims of misinformation or material omissions that impacted his actions are sufficient.  The Court reserves judgment on whether the Deposit Agreement bars the Estate from asserting a claim under Vermont law, as the parties have not fully briefed the question of whether a choice of law provision in a contract can prevent application of a consumer protection statute.  The motion for judgment on the pleadings is denied.

## Conclusion

For the reasons set forth above, Ally's motion for interpleader relief (ECF No. 77) is **granted in part and denied in part,** and its motions for dismissal of the counterclaims brought by the Estate (ECF No. 81) and BFAS (ECF No. 76) are **denied.**

DATED at Burlington, in the District of Vermont, this 6th day of August, 2020.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
